Daniel Sadeh, Esq.
**HALPER SADEH LLP**
667 Madison Avenue, 5th Floor
New York, NY 10065
Telephone: (212) 763-0060
Facsimile: (646) 776-2600
Email: sadeh@halpersadeh.com

*Counsel for Plaintiff*

**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**

| | |
|---|---|
| JOHN MINTZ,<br><br>    Plaintiff,<br><br>    v.<br><br>VICI PROPERTIES INC., JAMES R. ABRAHAMSON, DIANA CANTOR, MONICA HOWARD DOUGLAS, ELIZABETH I. HOLLAND, CRAIG MACNAB, EDWARD B. PITONIAK, and MICHAEL D. RUMBOLZ,<br><br>    Defendants. | Case No:<br><br>JURY TRIAL DEMANDED |

**COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS**

Plaintiff John Mintz ("Plaintiff"), by Plaintiff's undersigned attorneys, for Plaintiff's complaint against Defendants (defined below), alleges the following based upon personal knowledge as to Plaintiff and Plaintiff's own acts, and upon information and belief as to all other matters, based upon, *inter alia*, the investigation conducted by and through Plaintiff's attorneys.

**<u>NATURE OF THE ACTION</u>**

1.    This is an action against VICI Properties Inc. ("VICI" or the "Company") and its Board of Directors (the "Board" or the "Individual Defendants") for their violations of Sections 14(a) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act"), 15 U.S.C. §§ 78n(a)

1

and 78t(a), and Rule 14a-9 promulgated thereunder by the SEC, 17 C.F.R. § 240.14a-9, in connection with the proposed merger (the "Proposed Transaction") of VICI and MGM Growth Properties LLC ("MGP") and MGM Resorts International ("MGM Resorts"), MGP's controlling shareholder.

## JURISDICTION AND VENUE

2.      The claims asserted herein arise under and pursuant to Sections 14(a) and 20(a) of the Exchange Act (15 U.S.C. §§ 78n(a) and 78t(a)) and Rule 14a-9 promulgated thereunder by the SEC (17 C.F.R. § 240.14a-9).

3.      This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. § 1331, and Section 27 of the Exchange Act, 15 U.S.C. § 78aa.

4.      Venue is proper in this District pursuant to 28 U.S.C. § 1391(b) and Section 27 of the Exchange Act (15 U.S.C. § 78aa(c)) as a substantial portion of the transactions and wrongs complained of herein had an effect in this District, the alleged misstatements entered and the subsequent damages occurred in this District, and the Company is headquartered in New York City.

5.      In connection with the acts, conduct and other wrongs alleged in this complaint, Defendants, directly or indirectly, used the means and instrumentalities of interstate commerce, including but not limited to, the United States mails, interstate telephone communications and the facilities of the national securities exchange.

## PARTIES

6.      Plaintiff is, and has been at all relevant times hereto, an owner of VICI common stock.

7.     Defendant VICI is an experiential real estate investment trust that owns a portfolio of gaming, hospitality and entertainment destinations, including Caesars Palace. The Company is incorporated in Maryland. The Company's common stock trades on the New York Stock Exchange under the ticker symbol, "VICI."

8.     Defendant James R. Abrahamson ("Abrahamson") is Chairman of the Board of the Company.

9.     Defendant Diana Cantor ("Cantor") is a director of the Company.

10.    Defendant Monica Howard Douglas ("Douglas") is a director of the Company.

11.    Defendant Elizabeth I. Holland ("Holland") is a director of the Company.

12.    Defendant Craig Macnab ("Macnab") is a director of the Company.

13.    Defendant Edward B. Pitoniak ("Pitoniak") is Chief Executive Officer and a director of the Company.

14.    Defendant Michael D. Rumbolz ("Rumbolz") is a director of the Company.

15.    Defendants Abrahamson, Cantor, Douglas, Holland, Macnab, Pitoniak, and Rumbolz are collectively referred to herein as the "Individual Defendants."

16.    Defendants VICI and the Individual Defendants are collectively referred to herein as the "Defendants."

## SUBSTANTIVE ALLEGATIONS

### A. The Proposed Transaction

17.    On August 4, 2021, VICI, MGP, and MGM Resorts announced that they had entered into a definitive agreement pursuant to which VICI would acquire MGP for total consideration of $17.2 billion, inclusive of the assumption of approximately $5.7 billion of debt. The press release announcing the Proposed Transaction states, in pertinent part:

### VICI Properties Inc. Announces $17.2 Billion Strategic Acquisition of MGM Growth Properties LLC

- *Creates America's Largest Owner of Experiential Real Estate with an Enterprise Value of Approximately $45 Billion* -

- *Transaction Expected to be Accretive to AFFO per Share Immediately Upon Closing* -

- *Positions Balance Sheet for Investment Grade Status* -
- *Significantly Diversifies Tenant Base While Enhancing Portfolio Quality, Size and Scale to Drive Future Growth and Value Creation* -

- *VICI Announces 9.1% Dividend Increase* -

- *Conference Call to Discuss Transaction to be Held at 8:00am ET* -

August 04, 2021 07:00 AM Eastern Daylight Time

NEW YORK & LAS VEGAS--(BUSINESS WIRE)--VICI Properties Inc. (NYSE: VICI) ("VICI Properties" or "VICI"), MGM Growth Properties LLC (NYSE: MGP) ("MGP") and MGM Resorts International (NYSE: MGM) ("MGM Resorts"), MGP's controlling shareholder, announced today that they have entered into a definitive agreement (the "Master Transaction Agreement") pursuant to which VICI Properties will acquire MGP for total consideration of $17.2 billion, inclusive of the assumption of approximately $5.7 billion of debt. Upon completion of the merger, VICI will have an estimated enterprise value of $45 billion, firmly solidifying VICI's position as the largest experiential net lease REIT while also advancing VICI's strategic goals of portfolio enhancement and diversification.

Under the terms of the Master Transaction Agreement, MGP Class A shareholders will receive 1.366 shares of newly issued VICI stock in exchange for each Class A share of MGP. The fixed exchange ratio represents an agreed upon price of $43.00 per share of MGP Class A shares based on VICI's trailing 5-day volume weighted average price of $31.47 as of July 30, 2021 and represents a 15.9% premium to MGP's closing stock price on August 3, 2021. MGM Resorts will receive $43.00 per unit in cash for the redemption of the majority of its MGP Operating Partnership units ("OP Units") that it holds for total cash consideration of approximately $4.4 billion and will also retain approximately 12 million units in a newly formed operating partnership of VICI Properties. The MGP Class B share that is held by MGM Resorts will be cancelled and cease to exist.

Simultaneous with the closing of the transaction, VICI Properties will enter into an amended and restated triple-net master lease with MGM Resorts. The lease will have an initial total annual rent of $860.0 million, inclusive of MGP's pending acquisition of MGM Springfield, and an initial term of 25 years, with three 10-year

tenant renewal options. Rent under the amended and restated master lease will escalate at a rate of 2.0% per annum for the first 10 years and thereafter at the greater of 2.0% per annum or the consumer price index ("CPI"), subject to a 3.0% cap. Additionally, VICI will retain MGP's existing 50.1% ownership stake in the joint venture with Blackstone Real Estate Income Trust, Inc. ("BREIT JV"), which owns the real estate assets of MGM Grand Las Vegas and Mandalay Bay. The BREIT JV lease will remain unchanged and provides for current annual base rent of approximately $298 million and an initial term of 30 years, with two 10-year tenant renewal options. Rent under the BREIT JV lease escalates at a rate of 2.0% per annum for the first 15 years and thereafter at the greater of 2.0% per annum or CPI, subject to a 3.0% cap. On a combined basis, the MGM master lease and BREIT JV lease will deliver initial attributable rent to VICI of approximately $1.0 billion.

The transaction was approved by the Board of Directors of each of MGM Resorts, MGP and VICI Properties (and, in the case of MGP, the Conflicts Committee). The parties expect the transaction to close in the first half of 2022, subject to customary closing conditions, regulatory approvals and approval by the stockholders of VICI Properties. The VICI Properties Board of Directors and management team will remain unchanged.

\*       \*       \*

**Financing**

VICI Properties has secured a $9.3 billion financing commitment from Morgan Stanley, J.P. Morgan and Citibank.

**Advisors**

Morgan Stanley & Co LLC is acting as lead strategic and financial advisor to VICI Properties on the transaction. Citigroup Global Markets Inc. is also acting as financial advisor to VICI Properties. Hogan Lovells US LLP and Kramer Levin Naftalis & Frankel LLP are serving as legal advisors to VICI Properties. Baker Botts LLP is serving as legal advisor to MGP. Evercore is acting as financial advisor and Potter Anderson & Corroon LLP is serving as legal advisor to the Conflicts Committee of the MGP Board of Directors. J.P. Morgan is acting as financial advisor and Weil, Gotshal & Manges LLP is serving as legal advisor to MGM Resorts.

\*       \*       \*

**About VICI Properties**

VICI Properties Inc. is an experiential real estate investment trust that owns one of the largest portfolios of market-leading gaming, hospitality and entertainment destinations, including the world-renowned Caesars Palace. VICI Properties'

national, geographically diverse portfolio consists of 28 gaming facilities comprising over 47 million square feet and features approximately 17,800 hotel rooms and more than 200 restaurants, bars, nightclubs and sportsbooks. Its properties are leased to industry leading gaming and hospitality operators, including Caesars Entertainment, Inc., Century Casinos, Inc., Hard Rock International Inc., JACK Entertainment LLC and Penn National Gaming, Inc. VICI Properties also has an investment in the Chelsea Piers, New York facility and owns four championship golf courses and 34 acres of undeveloped land adjacent to the Las Vegas Strip. VICI Properties' strategy is to create the nation's highest quality and most productive experiential real estate portfolio. For additional information, please visit www.viciproperties.com.

**About MGM Growth Properties**

MGM Growth Properties LLC (NYSE:MGP) is one of the leading publicly traded real estate investment trusts engaged in the acquisition, ownership and leasing of large-scale destination entertainment and leisure resorts, whose diverse amenities include casino gaming, hotel, convention, dining, entertainment and retail offerings. MGP, together with its joint venture, currently owns a portfolio of properties, consisting of 12 premier destination resorts in Las Vegas and elsewhere across the United States, MGM Northfield Park in Northfield, OH, Empire Resort Casino in Yonkers, NY, as well as a retail and entertainment district, The Park in Las Vegas. As of December 31, 2020, MGP's portfolio of destination resorts, the Park, Empire Resort Casino, and MGM Northfield Park collectively comprised approximately 32,400 hotel rooms, 1.5 million casino square footage, and 3.6 million convention square footage.

**About MGM Resorts**

MGM Resorts International (NYSE: MGM) is an S&P 500® global entertainment company with national and international locations featuring best-in-class hotels and casinos, state-of-the-art meetings and conference spaces, incredible live and theatrical entertainment experiences, and an extensive array of restaurant, nightlife and retail offerings. MGM Resorts creates immersive, iconic experiences through its suite of Las Vegas-inspired brands. The MGM Resorts portfolio encompasses 31 unique hotel and gaming destinations globally, including some of the most recognizable resort brands in the industry. The Company's 50/50 venture, BetMGM, LLC, offers U.S. sports betting and online gaming through market-leading brands, including BetMGM and partypoker. The Company is currently pursuing targeted expansion in Asia through the integrated resort opportunity in Japan. Through its "Focused on What Matters: Embracing Humanity and Protecting the Planet" philosophy, MGM Resorts commits to creating a more sustainable future, while striving to make a bigger difference in the lives of its employees, guests, and in the communities where it operates. The global employees of MGM Resorts are proud of their company for being recognized as one of FORTUNE® Magazine's World's Most Admired Companies®.

18.     On September 23, 2021, Defendants caused to be filed with the SEC a Form 424B3 - Prospectus (the "Prospectus") in connection with the Proposed Transaction.

**B.  The Prospectus Contains Materially False and Misleading Statements and Omissions**

19.     The Prospectus, which recommends that VICI shareholders vote in favor of the Proposed Transaction, omits and/or misrepresents material information concerning: (i) VICI's and MGP's financial projections; (ii) the financial analyses performed by VICI's financial advisor, Morgan Stanley & Co. LLC ("Morgan Stanley"), in connection with its fairness opinion; and (iii) potential conflicts of interest involving Morgan Stanley.

20.     The omission of the material information (referenced below) renders the following sections of the Prospectus false and misleading, among others: (i) Recommendations of the VICI Board and Its Reasons for the Transactions; (ii) Opinion of VICI's Financial Advisor; (iii) Certain VICI Unaudited Prospective Financial Information; and (iv) Certain MGP Unaudited Prospective Financial Information.

21.     Unless and until the material misstatements and omissions (referenced below) are remedied before the October 29, 2021 shareholder vote on the Proposed Transaction, VICI shareholders will be forced to make a voting decision on the Proposed Transaction without full disclosure of all material information. In the event the Proposed Transaction is consummated, Plaintiff may seek to recover damages resulting from Defendants' misconduct.

**1.  Material Omissions Concerning VICI's and MGP's Financial Projections**

22.     The Prospectus omits material information concerning VICI's and MGP's financial projections.

23.     With respect to the "VICI Projections," the Prospectus fails to disclose: (1) all line items underlying (i) Total Revenues, (ii) Adjusted EBITDA, (iii) AFFO; and (iv) Unlevered Free Cash Flow; (2) VICI's net income projections; and (3) a reconciliation of all non-GAAP to GAAP

metrics.

24.     With respect to the "VICI Adjusted MGP Projections," the Prospectus fails to disclose: (1) all line items underlying (i) Total Pro Rata Cash Rents, (ii) Adjusted EBITDA, (iii) AFFO, and (iv) Unlevered Free Cash Flow; (2) MGP's net income projections; and (3) a reconciliation of all non-GAAP to GAAP metrics.

25.     With respect to the "MGP Projections," the Prospectus fails to disclose: (1) all line items underlying (i) Total Pro Rata Cash Rents, (ii) Adjusted EBITDA, and (iii) Unlevered Free Cash Flow; (2) MGP's net income projections; and (3) a reconciliation of all non-GAAP to GAAP metrics.

26.     With respect to the "MGP Adjusted VICI Projections," the Prospectus fails to disclose: (1) all line items underlying (i) Total Revenue, (ii) Adjusted EBITDA, and (iii) Unlevered Free Cash Flow; (2) VICI's net income projections; and (3) a reconciliation of all non-GAAP to GAAP metrics.

27.     The disclosure of this information is material because it would provide the Company's shareholders with a basis to project the future financial performance of the Company and combined company and would allow shareholders to better understand the financial analyses performed by the Company's financial advisor in support of its fairness opinion. Shareholders cannot hope to replicate management's inside view of the future prospects of the Company. Without such information, which is uniquely possessed by Defendant(s) and the Company's financial advisor, the Company's shareholders are unable to determine how much weight, if any, to place on the Company's financial advisor's fairness opinion in determining whether to vote for or against the Proposed Transaction.

28.     When a company discloses non-GAAP financial metrics in a Prospectus that were

relied upon by its board of directors in recommending that shareholders exercise their corporate suffrage rights in a particular manner, the company must also disclose, pursuant to SEC Regulation G, all projections and information necessary to make the non-GAAP metrics not misleading, and must provide a reconciliation (by schedule or other clearly understandable method) of the differences between the non-GAAP financial metrics disclosed or released with the most comparable financial metrics calculated and presented in accordance with GAAP. 17 C.F.R. § 244.100.[1]

29.     The above-referenced omitted information, if disclosed, would significantly alter the total mix of information available to the Company's shareholders.

### 2.  Material Omissions Concerning Morgan Stanley's Analyses

30.     In connection with the Proposed Transaction, the Prospectus omits material information concerning analyses performed by Morgan Stanley.

31.     With respect to Morgan Stanley's "*Comparable Public Company Analysis*," the Prospectus fails to disclose the individual multiples and financial metrics of each company Morgan Stanley observed in its analysis.

32.     The Prospectus fails to disclose the following concerning Morgan Stanley's "*Dividend Discount Analysis*": (1) the dividends per share that MGP and VICI were respectively forecasted to generate for the period from July 1, 2021 through December 31, 2025; (2) the

---

[1] Mary Jo White, *Keynote Address, International Corporate Governance Network Annual Conference: Focusing the Lens of Disclosure to Set the Path Forward on Board Diversity, Non-GAAP, and Sustainability* (June 27, 2016), https://www.sec.gov/news/speech/chair-white-icgn-speech.html (footnotes omitted) (last visited Oct. 16, 2021) ("And last month, the staff issued guidance addressing a number of troublesome practices which can make non-GAAP disclosures misleading: the lack of equal or greater prominence for GAAP measures; exclusion of normal, recurring cash operating expenses; individually tailored non-GAAP revenues; lack of consistency; cherry-picking; and the use of cash per share data. I strongly urge companies to carefully consider this guidance and revisit their approach to non-GAAP disclosures.").

terminal values of MGP and VICI; and (3) the individual inputs and assumptions underlying the (i) range of estimated AFFO multiples per share of 14.6x to 16.6x, and (ii) range of derived costs of equity from 5.9% to 7.9% and from 6.7% to 8.7%.

33.     The Prospectus fails to disclose the following concerning Morgan Stanley's "*Discounted Cash Flow Analysis*": (1) all line items underlying the respective cash flow projections of MGP and VICI; (2) the individual inputs and assumptions underlying the (i) range of discount rates from 5.4% to 6.7% and from 5.9% to 7.3%, and (ii) range of AV/EBITDA multiples of 16.1x to 17.1x; (3) MGP's and VICI's respective forecasted outstanding debt and forecasted outstanding cash; and (4) the number of fully diluted shares of MGP and VICI, respectively.

34.     With respect to Morgan Stanley's "*Premiums Paid Analysis*," the Prospectus fails to disclose the individual premiums paid in each transaction.

35.     The Prospectus fails to disclose the following concerning Morgan Stanley's "*Research Analyst Price Targets and NAV Targets*" analysis: (1) the individual price targets and net asset value estimates observed by Morgan Stanley in its analysis; and (2) the sources thereof.

36.     The valuation methods, underlying assumptions, and key inputs used by Morgan Stanley in rendering its purported fairness opinion must be fairly disclosed to VICI shareholders. The description of Morgan Stanley's fairness opinion and analyses, however, fails to include key inputs and assumptions underlying those analyses. Without the information described above, VICI shareholders are unable to fully understand Morgan Stanley's fairness opinion and analyses, and are thus unable to determine how much weight, if any, to place on them in determining whether to vote for or against the Proposed Transaction. This omitted information, if disclosed, would significantly alter the total mix of information available to the Company's

shareholders.

### 3. Material Omissions Concerning Potential Conflicts of Interest Involving Morgan Stanley

37.     The Prospectus omits material information concerning potential conflicts of interest involving Morgan Stanley.

38.     The Prospectus fails to disclose the timing and nature of the past services Morgan Stanley and/or its affiliates provided VICI, MGP, MGM Resorts, and/or their affiliates.

39.     The Prospectus provides that, "[a]s of the date of the opinion, affiliates of Morgan Stanley are lenders to each of VICI, MGP and MGM under their respective credit facilities [and] . . . Morgan Stanley also is a participant in the MGP Exchange Offers . . . and a Lender under the contemplated Bridge Facility[.]"

40.     The Prospectus, however, fails to disclose the amount of compensation that Morgan Stanley and/or its affiliates have received or expect to receive in connection with providing the aforementioned services.

41.     Disclosure of a financial advisor's compensation and potential conflicts of interest to shareholders is required due to their central role in the evaluation, exploration, selection, and implementation of strategic alternatives and the rendering of any fairness opinions. Disclosure of a financial advisor's potential conflicts of interest may inform shareholders on how much weight to place on that analysis.

42.     The omission of the above-referenced information renders the Prospectus materially incomplete and misleading. This information, if disclosed, would significantly alter the total mix of information available to the Company's shareholders.

## COUNT I
### For Violations of Section 14(a) and Rule 14a-9 Promulgated Thereunder
### Against All Defendants

43.     Plaintiff repeats and realleges each and every allegation contained above as if fully set forth herein.

44.     During the relevant period, Defendants, individually and in concert, directly or indirectly, disseminated or approved the false and misleading Prospectus specified above, which failed to disclose material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading, in violation of Section 14(a) of the Exchange Act and Rule 14a-9 promulgated thereunder by the SEC.

45.     Each of the Individual Defendants, by virtue of his/her positions within the Company as officers and/or directors, were aware of the omitted information but failed to disclose such information, in violation of Section 14(a) of the Exchange Act. Defendants, by use of the mails and means and instrumentalities of interstate commerce, solicited and/or permitted the use of their names to file and disseminate the Prospectus with respect to the Proposed Transaction. The Defendants were, at minimum, negligent in filing the materially false and misleading Prospectus.

46.     The false and misleading statements and omissions in the Prospectus are material in that a reasonable shareholder would consider them important in deciding how to vote on the Proposed Transaction.

47.     By reason of the foregoing, Defendants have violated Section 14(a) of the Exchange Act and Rule 14a-9 promulgated thereunder.

48.     Because of the false and misleading statements and omissions in the Prospectus, Plaintiff is threatened with irreparable harm.

<u>**COUNT II**</u>
**Violations of Section 20(a) of the Exchange Act**
<u>**Against the Individual Defendants**</u>

49.     Plaintiff repeats and realleges each and every allegation contained in the foregoing paragraphs as if fully set forth herein.

50.     The Individual Defendants acted as control persons of the Company within the meaning of Section 20(a) of the Exchange Act as alleged herein. By virtue of their senior positions as officers and/or directors of the Company and participation in and/or awareness of the Company's operations and/or intimate knowledge of the false statements contained in the Prospectus filed with the SEC, they had the power to and did influence and control, directly or indirectly, the decision-making of the Company, including the content and dissemination of the false and misleading Prospectus.

51.     Each of the Individual Defendants was provided with or had unlimited access to copies of the Prospectus and other statements alleged by Plaintiff to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause the statements to be corrected. As officers and/or directors of a publicly owned company, the Individual Defendants had a duty to disseminate accurate and truthful information with respect to the Prospectus, and to correct promptly any public statements issued by the Company which were or had become materially false or misleading.

52.     In particular, each of the Individual Defendants had direct and supervisory involvement in the operations of the Company, and, therefore, is presumed to have had the power to control or influence the particular transactions giving rise to the securities violations as alleged herein, and exercised the same. The Individual Defendants were provided with or had unlimited access to copies of the Prospectus and had the ability to prevent the issuance of the statements or

to cause the statements to be corrected. The Prospectus at issue contains the recommendation of the Individual Defendants to approve the Proposed Transaction. Thus, the Individual Defendants were directly involved in the making of the Prospectus.

53.     In addition, as the Prospectus sets forth at length, and as described herein, the Individual Defendants were involved in negotiating, reviewing, and approving the Proposed Transaction. The Prospectus purports to describe the various issues and information that they reviewed and considered—descriptions which had input from the Individual Defendants.

54.     By virtue of the foregoing, the Individual Defendants have violated Section 20(a) of the Exchange Act.

55.     As set forth above, the Individual Defendants had the ability to exercise control over and did control a person or persons who have each violated Section 14(a) and Rule 14a-9 promulgated thereunder, by their acts and omissions as alleged herein. By virtue of their positions as controlling persons, the Individual Defendants are liable pursuant to Section 20(a) of the Exchange Act. As a direct and proximate result of Defendants' conduct, the Company's shareholders will be irreparably harmed.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff prays for judgment and relief as follows:

A.      Preliminarily and permanently enjoining Defendants and all persons acting in concert with them from proceeding with, consummating, or closing the Proposed Transaction and any vote on the Proposed Transaction, unless and until Defendants disclose and disseminate the material information identified above to Company shareholders;

B.      In the event Defendants consummate the Proposed Transaction, rescinding it and setting it aside or awarding rescissory damages;

C.      Declaring that Defendants violated Sections 14(a) and 20(a) of the Exchange Act,

and Rule 14a-9 promulgated thereunder;

D.      Awarding Plaintiff reasonable costs and expenses incurred in this action, including

counsel fees and expert fees; and

E.      Granting such other and further relief as the Court may deem just and proper.

## JURY TRIAL DEMANDED

Plaintiff hereby demands a trial by jury.

Dated: October 16, 2021                                 Respectfully submitted,

**HALPER SADEH LLP**

By: /s/ Daniel Sadeh
Daniel Sadeh, Esq.
Zachary Halper, Esq. (to be admitted *pro hac vice*)
667 Madison Avenue, 5th Floor
New York, NY 10065
Telephone: (212) 763-0060
Facsimile: (646) 776-2600
Email: sadeh@halpersadeh.com
        zhalper@halpersadeh.com

*Counsel for Plaintiff*